**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. _____**

_____
                                                        )
JOHN THOMAS,                                  )
                                                        )
            Plaintiff,                        )
                                                        )
    vs.                                          )
                                                        )
NATIONAL ASSOCIATION FOR            )
STOCK CAR AUTO RACING, INC.;       )
NATIONAL ASSOCIATION FOR            )
STOCK CAR AUTO RACING, INC.          )
LOSS OF LICENSE PLAN; PETERSEN   )
INTERNATIONAL UNDERWRITERS       )
INCORPORATED; CERTAIN                 )
UNDERWRITERS AT LLOYD'S,            )
LONDON SUBSCRIBING                      )
TO CERTIFICATE NUMBER                 )
1476378-25; and DISABILITY             )
MANAGEMENT SERVICES, INC.,         )
                                                        )
           Defendants.                     )
_____)

## COMPLAINT

PRELIMINARY STATEMENT[1]

      JOHN THOMAS ("Plaintiff") brings this action under the Employee Retirement Income

Security Act of 1974, as amended ("ERISA") against NATIONAL ASSOCIATION FOR

STOCK CAR AUTO RACING, INC. ("NASCAR"); the NATIONAL ASSOCIATION FOR

STOCK CAR AUTO RACING, INC. LOSS OF LICENSE PLAN ("Plan"); PETERSEN

INTERNATIONAL UNDERWRITERS INCORPORATED ("Petersen"); CERTAIN

---

[1]This Preliminary Statement gives a synopsis of Plaintiff's claim and is not intended as an allegation to be answered by Defendants.

UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO CERTIFICATE NUMBER 1476378-25 ("Lloyd's"); and DISABILITY MANAGEMENT SERVICES, INC. ("DMS"). Plaintiff brings this ERISA action to secure benefits due him; to clarify his rights under the Plan; on account of breaches of fiduciary duties owed to Plaintiff and the Plan by Defendant NASCAR, Defendant Petersen, Defendant Lloyd's, and Defendant DMS; and for other appropriate equitable relief.

PARTIES

1. Plaintiff John Thomas is a citizen and resident of Cabarrus County, North Carolina.

2. Defendant Petersen is a properly organized business entity doing business in the state of North Carolina. Defendant Petersen is a fiduciary of the Plan making benefits determinations under the Plan.

3. Defendant Lloyd's is a properly organized business entity doing business in the state of North Carolina. Defendant Lloyd's is a fiduciary of the Plan making benefits determinations under the Plan.

4. Defendant DMS is a properly organized business entity doing business in the state of North Carolina. Defendant DMS is a fiduciary of the Plan making benefits determinations under the Plan.

5. Defendant NASCAR is a properly organized business entity doing business in the state of North Carolina. At all times pertinent hereto, Defendant NASCAR sponsored and maintained the Plan. At all times pertinent hereto, Defendant NASCAR was the plan administrator of the Plan, as that term is defined in ERISA § 3(16), 29 U.S.C. § 1002(16).

6. The Plan is an employee welfare benefit plan organized and subject to ERISA, 29 U.S.C. §§ 1001, *et seq*. and the regulations promulgated thereunder.

<u>JURISDICTION AND VENUE</u>

7. This court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331, in that Plaintiff's claims arise under the laws of the United States. Specifically, Plaintiff brings this action to secure benefits due to him under ERISA § 502, 29 U.S.C. § 1132; on account of breaches of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109, through ERISA § 502, 29 U.S.C. § 1132; and for other appropriate equitable relief under ERISA § 502, 29 U.S.C. § 1132.

8. Venue in the Western District of North Carolina is appropriate by virtue of Defendants NASCAR, Petersen, Lloyd's, DMS and the Plan doing business and being found in this district, and the administration of the Plan in this district.

<u>FACTUAL ALLEGATIONS</u>

9. On or around May 25, 2012 Plaintiff was hired by Defendant NASCAR as an aircraft pilot.

10. In July 2014, human resources employees at NASCAR held a meeting with all pilots in Charlotte, North Carolina, where they notified Plaintiff that they were obtaining "Loss of License" insurance for Plaintiff and other pilots through Defendant Petersen. At this meeting, the Plan terms were discussed. There was no mention of any benefit offsets or coordinated benefits provisions. The human resources employees did not tell Plaintiff or any of the other employees present that there would be any offset or diminution for any reason.

11. On or around September 19, 2014, Plaintiff was presented with a copy of the Plan. The Plan lists an effective date of September 1, 2014.

12.     Plaintiff was issued Certificate Number 1476378-25.  Plaintiff is listed as the insured on that certificate.

13.     The Plan documents presented to Plaintiff in September 2014 consisted of The Certificate, The Schedule of Benefits, The Policy, a Service of Suit Clause, Privacy Policy and four (4) endorsements, titled: "Endorsement," "Pre-Existing Condition Endorsement," "Automatic Benefit Increase Endorsement," and "Benefit Period Reduction Schedule Endorsement."  Each of the four (4) endorsements were signed by W. Harold Petersen, President of Defendant Petersen, on September 8, 2014.

14.     The Plan provides for Monthly Benefit of five-thousand-seven-hundred-forty-eight dollars ($5,748.00) for a Maximum Benefit Period of sixty (60) months, during the "Suspension of [the Insured's] License," so long as the suspension results from "(1) a Sickness manifesting itself, or (2) an Injury that occurs, while this Certificate is in force."

15.     The Plan as presented to Plaintiff in 2014 did not reference or otherwise provide for any reduction of benefits due to any offset of other income.

16.     To date, Defendant NASCAR has never issued participants a summary plan description ("SPD") for the Plan.

17.     To date, Plaintiff has not received an SPD for the Plan.

18.     Upon information and belief, Plaintiff's employer, Defendant NASCAR, negotiated the Plan terms and paid all premiums for the Plan for the benefit of Plaintiff and all NASCAR's other pilots.

19.     Upon information and belief, Defendants Petersen, Lloyd's and DMS administer the Plan and have authority to grant or deny benefits.

20.     Defendants Petersen, Lloyd's and DMS have a fiduciary obligation to Plaintiff to administer the Plan fairly, and to determine benefits according to the terms of the Plan.

21.     Plaintiff has routinely seen Dr. Albert Hudson of Carolinas Medical Center for regular physical examinations and health clearance for flight for over ten (10) years.

22.     Dr. Hudson is board certified in Internal Medicine, and is a Senior Aviation Medical Examiner.

23.     In 2011, during a screening test, Dr. Hudson discovered that Plaintiff had a cerebral angioma, which is a blood vessel abnormality in the brain. The cerebral angioma has been monitored since its discovery and was not symptomatic at the time of discovery.

24.     On or around October 2015, Plaintiff began experiencing episodes of severe headaches accompanied by strange cognitive symptoms, such as: memory lapses, difficulty with pronunciation of words, difficulty repeating back flight instructions, dizziness, blurred vision, macropsia (seeing objects larger than they actually are), micropsia (seeing objects smaller than they actually are), tremors and difficulty sleeping.

25.     One of said episodes occurred during flight, and Plaintiff became unable to repeat a flight code back to flight control, a routine task he was able to do previously.

26.     Plaintiff immediately reported these symptoms to Dr. Hudson.

27.     In the fall of 2015, Dr. Hudson ran several diagnostic procedures, and diagnosed Plaintiff with intermittent nonconvulsive epilepsy due to bleeding in the cerebral angioma. Plaintiff was also diagnosed with severe hypertension.

28.     Dr. Hudson prescribed Plaintiff medicines to treat his nonconvulsive epilepsy that are disqualifying for flight.

29. Dr. Hudson indicated that both Plaintiff's condition of nonconvulsive epilepsy and the associated medications disqualify him from medical clearance for flight.

30. On October 23, 2015, Dr. Hudson informed Plaintiff that Dr. Hudson was going to cancel Plaintiff's flight eligibility status as a result of his medical conditions.

31. On or around October 23, 2015, Plaintiff received correspondence from the Federal Aviation Administration (FAA) which indicated that Plaintiff was no longer licensed to fly due to his medical condition.

32. Plaintiff immediately informed NASCAR of his flight eligibility status (not allowed to fly). On or around October 29, 2015, NASCAR informed DMS of Plaintiff's claim for benefits under the Plan.

33. On or around December 4, 2015, Dr. Hudson again informed Plaintiff that he was disqualified for flight in writing.

34. On January 20, 2016, Defendant DMS notified Plaintiff in writing that Defendant Lloyd's approved Plaintiff's claim for benefits under the Plan based on his loss of license occurring October 20, 2015.

35. The Plan provides for a waiting period of ninety (90) days. Based on Defendant DMS's determined Loss of License date of October 20, 2015, Plaintiff was entitled to benefits under the Plan beginning on January 17, 2016, with the first payment scheduled to be issued February 17, 2016.

36. On or around January 29, 2016, Defendant DMS completed an Internal Clinical Review that supported Dr. Hudson's findings. The review concluded that the condition of epilepsy and medications are disqualifying for license to fly, that the lesion in Plaintiff's brain is

non-operable and will not disappear, and that it is more likely than not that Plaintiff will be permanently prohibited from flight.

37.     At the time of his illness entitling him to Plan benefits, Plaintiff had several other insurance policies, which included the Plan (Loss of License), the NASCAR Short-Term Disability Insurance Plan, ("NASCAR STD Plan"), the NASCAR Long-Term Disability Insurance Plan, ("NASCAR LTD Plan") and privately maintained disability insurance.

38.     Plaintiff inquired with his employer, NASCAR, as to whether any of his NASCAR plans had offset provisions that would limit his benefits under any of his insurance plans.

39.     On December 17, 2015, Olga Perez, Benefits Specialist at NASCAR, contacted Defendant DMS to inquire about the interaction between the Plan and Plaintiff's other short and long-term disability coverage.

40.     On December 17, 2015, Mary McFaul, a Senior Claim Consultant employed by Defendant DMS, informed Ms. Perez that she had reviewed Plaintiff's certificate, and that the Plan "does not offset or limit for other benefits."  Ms. McFaul further explained that "there are loss-of-license policies that offset or limit for other coverage, usually with a CBP, [Coordinated Benefit Provision] which I do not see on his coverage."

41.     On December 17, 2015, Ms. McFaul emailed Ms. Perez and confirmed, in writing, "there are no offsets or benefit limits for other disability benefits" in the Plan.

42.     On January 7, 2016, Plaintiff contacted Defendant DMS and notified them that he had other sources of benefits. Plaintiff inquired whether his benefits under the plan would be offset by other coverage.

43.     On January 7, 2016, Ms. McFaul explained to Plaintiff "that his Lloyd's benefit amount is the $5748/mo and that there is not any endorsement or provision on his coverage that would offset his Lloyd's benefit for other benefits."

44.     On or around February 1, 2016, Defendant DMS contacted Defendant Petersen as Defendant DMS had found out "that the insured has LTD coverage" and inquired about offsets under the Plan.

45.     On or around February 9, 2016—sixteen weeks after Plaintiff's loss of license and almost three weeks after Defendant DMS approved Plaintiff's claim and he was supposed to begin receiving benefits—Defendant Petersen indicated that they would send Defendant DMS "a copy of the missing endorsements" in the next couple of days. Defendant Petersen stated, "we would like to propose to you and [Defendant Lloyd's] that we do proceed with coordinating the benefit with any other coverage that [Plaintiff] should be receiving per the attached endorsement which we will be adding from inception."  To this email, Defendant Petersen attached a coordinated benefit provision endorsement, (hereafter, "the CBP Endorsement"), which indicated that benefits provided under the Plan would be coordinated with other private and Social Security Disability benefits "and adjusted so as not to exceed sixty-five percent (65%) of Your Average Earned Income."

46.     The CBP Endorsement was signed on February 9, 2016 by W. Harold Petersen, President of Defendant Petersen, with an "Effective Date of Endorsement" listed as September 1, 2014.

47.     ERISA §402(b)(3), 29 U.S.C. § 1102(b)(3) provides that "Every employee benefit plan shall … provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan."

48.     The Plan provides that "No agent, producer or other person, other than an authorized officer of Ours, has the authority to change this Certificate or waive any of its provisions.  Any changes are not valid unless approved by Us and recorded in writing to be attached to and form part of this Certificate."

49.     The Plan states that "Our, We, Us refers to Certain Underwriters at Lloyd's."

50.     The Plan states that "Petersen International Underwriters is not the insurer."  The Plan also states that "This insurance is effected with certain Underwriters at Lloyd's, London."

51.     The Plan provides that Petersen is not authorized to amend Plan terms.

52.     Petersen's attempted amendment of the Plan violates ERISA §402(b)(3), 29 U.S.C. § 1102(b)(3).

53.     On February 10, 2016—the very next day after Defendant Petersen's attempted retro-active amendment of the Plan—Ms. McFaul contacted Plaintiff by phone to inform Plaintiff of the CPB Provision that Defendant DMS would now apply to the Plan.  Ms. McFaul informed Plaintiff that this would substantially reduce his benefit amount under the Plan, but that Defendant DMS was still in the process of calculating the payment amount. Ms. McFaul explained that she anticipated the benefit to be approximately several hundred dollars per month. At this time, Plaintiff told Ms. McFaul that it was unfair to retroactively amend the Plan and enact the CPB Endorsement.  Defendant DMS informed Plaintiff orally of grievance procedures under the Plan, but stated that no further decision on the amount of benefits Plaintiff would receive had been made at this time.

54.     Because Plaintiff was unable to be a pilot as a result of his loss of license, Plaintiff began to suffer financial hardships and was not always able to pay his bills in a timely

manner. Plaintiff was expecting and counting on the benefits from the Plan for income for him and his family after he lost his pilot's license.

55.     On February 17, 2016, Defendant NASCAR contacted Defendant DMS to request input on explaining Plaintiff's benefits to Plaintiff. Ms. McFaul responded and requested that NASCAR use language drafted by Defendant DMS to describe Plaintiff's rights to benefits under the Plan. The language drafted by Defendant DMS represented that Plaintiff's benefits under the Plan would be subject to the alleged retro-active amendment.

56.     Defendant NASCAR did not question Defendants Petersen or DMS about the validity of the attempted retroactive amendment of the Plan by Defendant Petersen.

57.     On April 18, 2016, Defendant NASCAR contacted Defendant DMS to inquire about the status of benefits under the Plan for Plaintiff. Defendant DMS confirmed that they had not issued any benefits and had not calculated the benefits owed to Plaintiff. Defendant DMS stated that they were waiting on direction from Defendant Lloyd's before issuing benefits or making a determination about the amount of benefits to be paid to Plaintiff.

58.     On May 6, 2016, Defendant DMS informed Plaintiff that Defendant DMS had determined that the combined value of Plaintiff's disability benefits exceeded sixty-five percent (65%) of his pre-date of loss earnings. Based on this calculation, Defendant DMS determined that no benefits were payable to Plaintiff under the Plan.

59.     Defendant Petersen is a fiduciary as defined in ERISA § 3(21), 29 U.S.C. § 1002(21)(A), because Defendant Petersen has discretionary authority or discretionary responsibility in the administration of the Plan, including but not limited to making benefits determinations under the Plan.

60.     Defendant Lloyd's is a fiduciary as defined in ERISA § 3(21), 29 U.S.C. §

1002(21)(A), because Defendant Lloyd's has discretionary authority or discretionary responsibility in the administration of the Plan, including but not limited to making benefits determinations under the Plan.

61.     Defendant DMS is a fiduciary as defined in ERISA § 3(21), 29 U.S.C. § 1002(21)(A), because Defendant DMS has discretionary authority or discretionary responsibility in the administration of the Plan, including but not limited to making benefits determinations under the Plan.

62.     As the Plan Administrator, Defendant NASCAR is a fiduciary as defined in ERISA § 3(21), 29 U.S.C. § 1002(21)(A), and is obligated to, and responsible for, disseminating information regarding the Plan and the benefits under the Plan to the Plan participants.

63.     In holding employee benefit meetings regarding the Plan and the benefits and terms and conditions of the Plan, NASCAR acted as Plan Administrator.

64.     NASCAR, as Plan Administrator, provided the human resource employees conducting the employee benefit meetings actual and apparent authority to inform Plan participants about the terms and conditions of the Plan by establishing those employees as the human resource employees who would inform Defendant NASCAR's pilots about their employee benefits, including the Plan.

65.     At all times relevant hereto, Ms. McFaul was acting as an employee of Defendant DMS and was acting and speaking on behalf of Defendant DMS.

66.     Plaintiff told Ms. McFaul that he was concerned about not being covered under the Plan or how his various insurance benefits would impact other benefits. Ms. McFaul did not inform Plaintiff of any alleged offset, reduction or diminution of this amount for any reason until February 2015, _after_ benefits were owed to Plaintiff under the terms of the Plan.

67.     Plaintiff relied on the written terms of the Plan presented to him in September 2014 and the statements about Plan terms made by Defendant NASCAR in July 2014 and thereafter, which terms and statements did not include any offset or diminution of Plan benefits for any reason.

68.     Plaintiff's reliance on the written terms of the Plan presented to him in September 2014 and the statement about Plan terms and benefits made by Defendant NASCAR in July 2014 and thereafter (including the lack of any reduction or diminution in the amount of those benefits) was reasonable, including because Defendant NASCAR provided its employees actual and apparent authority to disseminate information and provide employees assistance regarding their benefits, including Plan benefits.

69.     Because of the assurances of Ms. McFaul that Plaintiff would receive five-thousand-seven-hundred-forty-eight dollars $5,748.00 per month in benefits under the Plan, and the lack of any indication that this amount would be reduced or diminished for any reason, Plaintiff relied on the statements of Ms. McFaul regarding the amount of benefits to which Plaintiff was entitled under the Plan.

70.     Plaintiff's reliance on the statements of Ms. McFaul regarding the amount of benefits (including the lack of any reduction or diminution in the amount of those benefits) was reasonable because Defendant DMS gave Ms. McFaul actual and apparent authority to disseminate information and provide employees assistance regarding their benefits, including Plan benefits.

71.     Because the Plan terms provided that Plaintiff would receive $5,748.00 per month for a term of sixty (60) months under the Plan without any reduction or diminution for any reason, and because of the statements about the Plan benefits made by Defendant NASCAR and

Defendant DMS, Plaintiff decided to forego purchasing any other additional type of long-term disability, loss of license, or other income replacement insurance. Given his diagnosis with cerebral angioma in 2011, Plaintiff routinely considered his financial state and specifically relied upon the statements of NASCAR, DMS, and their respective employees, including Ms. McFaul, in deciding not to purchase other insurance or to take any other financial steps to provide for his family's financial well being to replace his income in the event that he was unable to work as a result of complications from the cerebral angioma.

72.     At no time during his employment with NASCAR and his participation in the Plan, including the time after he lost his license under the terms of the Plan, did Plaintiff receive any SPD for the Plan or any other writing describing the terms and conditions of the Plan outside of the certificate provided in September 2014.

73.     On June 28, 2016, Plaintiff appealed Defendant DMS's May 6, 2016 determination in accordance with the grievance procedures required in the Plan.

74.     In a letter dated September 29, 2016, Defendant DMS informed Plaintiff that his appeal had been denied.

75.     ERISA's claims procedures, 29 C.F.R. § 2560-503-1, provide that a plan must establish, follow, and notify participants of all plan claim procedures, including but not limited to providing a response to any appeal within 60 days after the appeal. ERISA's claims procedures further require that they be provided in writing to all plan participants and beneficiaries.

76.     The Plan does not contain the notice provisions required by ERISA's claims procedures, and Plaintiff was never furnished an SPD containing any ERISA claims procedures. In addition, the Plan did not respond to Plaintiff's appeal within the required time.

77.     ERISA's claims regulations provide that where a plan fails to establish or follow required claims procedures, a participant is deemed to have exhausted the administrative remedies available under the plan and is entitled to pursue all available remedies under ERISA. Because, among other reasons, the Plan does not contain the notice provisions required by ERISA's claims procedures (including an SPD), Plaintiff is deemed to have exhausted any required administrative procedures prior to bringing this action.

78.     To date, Plaintiff has not received any benefits under the Plan.

79.     Plaintiff pursued his administrative remedies set forth in the Plan. Plaintiff now has exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to ERISA § 502, 29 U.S.C. § 1132. In the alternative, any request or further request for administrative review by Plaintiff would be futile.

## FIRST CLAIM FOR RELIEF:
## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 USC § 1132

80.     Plaintiff reincorporates and re-alleges the allegations contained at paragraphs 1-79 above.

81.     Plaintiff is entitled to the Plan benefit as explained by the Plan as it existed on the date of his claim, *i.e.*, $5,748.00 per month for sixty (60) months.

82.     Plaintiff is entitled to the Plan benefit that was represented to him (in response to his inquiries) by Defendant DMS, NASCAR acting as Plan Administrator, and their employees acting on their behalf, *i.e.*, $5,748.00 per month for sixty (60) months.

83.     Defendants Petersen, Lloyd's, DMS, and the Plan have wrongfully denied benefits to Plaintiff in violation of the Plan provisions and ERISA for the following reasons:

a.      Plaintiff has been wrongfully denied loss of license benefits;

b. Defendants Petersen, Lloyd's, and DMS failed to accord proper weight to the evidence in the administrative record; and

c. Defendants Petersen, Lloyd's, and DMS and Defendant Plan have violated their contractual obligation to furnish loss of license benefits to Plaintiff.

84. Plaintiff has been harmed by the conduct of Defendants.

SECOND CLAIM FOR RELIEF:
FIDUCIARY BREACH IN VIOLATION OF ERISA, 29 U.S.C. §§ 1109 AND 1132

85. Plaintiff reincorporates and re-alleges the allegations contained at paragraphs 1-84 above.

86. Defendant NASCAR is a fiduciary as defined in ERISA § 3(21), 29 U.S.C. § 1002(21), because Defendant NASCAR has discretionary authority or discretionary responsibility in the administration of the Plan.

87. As the Plan administrator, Defendant NASCAR is obligated to, and responsible for, disseminating information regarding the Plan and the benefits under the Plan to the Plan participants.

88. Defendant NASCAR breached its fiduciary duties by failing to distribute an SPD of the Plan to Plan participants and beneficiaries by a method reasonably calculated to ensure receipt by such participants and beneficiaries.

89. Defendant NASCAR also breached its fiduciary duties by failing to monitor the distribution of information regarding Plan benefits by employees performing its duties as Plan Administrator to provide accurate and complete information to Plan participants.

90. Defendant NASCAR also breached its fiduciary duties by failing to provide accurate and truthful information to Plan participants regarding any applicable diminutions and offsets to Plan benefits.

91. Defendant NASCAR also breached its fiduciary duties by failing to administer the Plan according to its terms; by failing to monitor other fiduciaries to whom it delegated authority and responsibility for claims processing and determination under the Plan; and by allowing an attempted amendment to the Plan terms in violation of ERISA and Plan terms.

92. Defendants DMS, Lloyd's, and Petersen breached their fiduciary duties by failing to administer the Plan according to its terms. Defendant Petersen further breached its fiduciary duties by attempting to amend the Plan document when it had no authority under the Plan terms or ERISA to amend the Plan.

93. Plaintiff and the Plan have been harmed as a result of Defendant NASCAR's failure to distribute an ERISA-complaint SPD because participants and beneficiaries have not been informed, in plain language, of the terms of the Plan and their rights under the Plan, thereby preventing them from being able to understand and enforce Plan terms. Plaintiff and the Plan have been further harmed as a result of Defendants' breaches of fiduciary duties alleged herein because the Plan is and has not been enforced according to its terms, thereby depriving the Plan and all participants and beneficiaries of Plan benefits.

94. Plaintiff, on behalf of the Plan, is entitled to equitable and remedial relief requiring that Defendant NASCAR:

    a. distribute an ERISA-compliant summary plan description of the Plan to Plan participants and beneficiaries by a method reasonably calculated to ensure receipt by such participants and beneficiaries;

    b. monitor distribution of information regarding Plan benefits by individuals with actual and apparent authority to provide such information, including providing training to such individuals regarding Plan benefits and procedures;

c. provide accurate and truthful information to Plan participants regarding the applicable diminutions and offsets to Plan benefits;

d. otherwise comply with all requirements under ERISA §1 *et seq*., 29 U.S.C. §§ 1001 *et seq*., with respect to disclosures to Plan participants and beneficiaries;

e. enforce the Plan compliant with the representations made by Defendant DMS, Defendant NASCAR, and their respective employees to Plaintiff regarding the Plan and the benefits Plaintiff would receive under the Plan;

f. pay to the Plan the amount necessary to fund Plaintiff's Plan benefit under the Plan;

g. enforce the Plan according to its Plan terms existing at the time of Plaintiff's loss of license;

h. refuse to enforce attempted amendments to the Plan in violation of the Plan terms and ERISA; and

i. monitor claims fiduciaries to ensure their compliance with Plan terms and ERISA.

95. Plaintiff, on behalf of the Plan, is entitled to equitable and remedial relief requiring that Defendants DMS, Lloyd's, and Petersen:

a. enforce the Plan according to its Plan terms existing at the time of Plaintiff's loss of license;

b. cease from attempting to enforce the invalidly adopted alleged amendments to the Plan; and

c. cease from attempting to amend the Plan in violation of ERISA and Plan terms.

## THIRD CLAIM FOR RELIEF:
## OTHER APPROPRIATE EQUITABLE RELIEF
## PURSUANT TO ERISA § 502, 29 U.S.C. § 1132

96.     Plaintiff reincorporates and re-alleges the allegations contained at paragraphs 1-95 above.

97.     Pursuant to Federal Rule of Civil Procedure 8, Plaintiff pleads this claim for relief in the alternative to his first claim for relief.

98.     As plan administrator of the Plan, Defendant NASCAR is a fiduciary as defined in ERISA § 3(21), 29 U.S.C. § 1002(21), because Defendant NASCAR has discretionary authority or discretionary responsibility in the administration of the Plan.

99.     Defendant NASCAR breached its fiduciary duties by failing to distribute summary plan descriptions of the Plan to Plan participants and beneficiaries by a method reasonably calculated to ensure receipt by such participants and beneficiaries.

100.     Defendant NASCAR also breached its fiduciary duties by failing to monitor the distribution of information regarding Plan benefits by employees performing its duties as Plan Administrator to provide accurate and complete information to Plan participants.

101.     Defendants NASCAR, DMS, Petersen, and Lloyd's also breached their fiduciary duties by failing to provide accurate and truthful information to Plan participants regarding the alleged applicable diminutions and offsets to Plan benefits.

102.     Plaintiff reasonably relied on the information (or lack of information) provided him by Defendant NASCAR, DMS, Petersen, and Lloyd's and its employees regarding the alleged applicable reductions, diminutions and offsets to Plan benefits, and such reliance was to his detriment, in that Plaintiff did not maintain other loss of license insurance or undertake other financial arrangements to provide for his and his family's well-being in the event of Plaintiff's

inability to maintain his pilot's license.

103. Plaintiff was prejudiced by the information (or lack of information) provided him by Defendants NASCAR, DMS, Petersen, and Lloyd's and their employees regarding the alleged applicable reductions, diminutions and offsets to Plan benefits, in that Plaintiff did not obtain additional loss of license insurance or undertake other financial arrangements to provide for his and his family's well-being in the event of Plaintiff's inability to maintain his pilot's license.

104. Plaintiff has been further prejudiced and harmed by Petersen's alleged amendment of the Plan, which deprived Plaintiff of the benefits of the Plan, in violation of Plan terms and ERISA. Plaintiff has been further prejudiced and harmed by Defendant NASCAR's, Lloyd's, Petersen's and DMS's attempted enforcement of the improper amendment of the Plan, in that Plaintiff has not received the loss of license benefits to which he is entitled under the terms of the Plan as they existed at the time of his loss of license.

105. Plaintiff has suffered harm by the conduct of Defendants as alleged herein in that he is not receiving the full value of the loss of license benefits under the Plan, as the Plan terms existed at the time Plaintiff lost his license as a result of his medical condition.

106. Plaintiff is entitled to equitable relief:

   a. imposing an equitable lien on the Plan benefits that have been withheld from Plaintiff as a result of his qualification for disability benefits or other income;

   b. imposing a constructive trust on the Plan benefits that have been withheld from Plaintiff as a result of his qualification for disability benefits or other income;

   c. enjoining Defendants DMS, Petersen, and Lloyd's from reducing Plaintiff's long-term benefits under the Plan on account of his receipt of disability benefits or other income;

d.  imposing a surcharge upon Defendants DMS, Petersen, and Lloyd's requiring that they pay to Plaintiff the money they withheld from him;

e.  equitably estopping Defendants DMS, Petersen, and Lloyd's from denying Plaintiff his full benefits under the Plan without offset, reduction or diminution in any manner;

f.  granting Plaintiff restitution for the amount of benefits that Defendants DMS, Petersen, and Lloyd's have wrongfully withheld from Plaintiff by offsetting his Plan benefits by the amount of disability benefits or other income Plaintiff receives;

g.  enjoining Defendant Petersen from attempting to amend the Plan terms, and from attempting to enforce any improper amendment of Plan terms;

h.  enjoining NASCAR, DMS, Petersen and Lloyd's from attempting to enforce amendments of the Plan made in violation of Plan terms and ERISA;

i.  reforming the Plan to comply with the representations made by Defendant DMS, NASCAR, and their respective employees to Plaintiff regarding the Plan and the benefits Plaintiff was to receive under the Plan;

j.  ordering that Plaintiff is entitled to benefits under the Plan without diminution or reduction on account of any amounts that he receives as disability benefits or for any other reason; and

k.  Other appropriate declaratory, injunctive and equitable relief.

### FOURTH CLAIM FOR RELIEF:
### ATTORNEY'S FEES UNDER ERISA § 502, 29 USC § 1132

107.  Plaintiff reincorporates and re-alleges the allegations contained at paragraphs 1-106 above.

Plaintiff is entitled to his attorney's fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiff prays that the Court:

1. Grant Plaintiff declaratory and injunctive relief, finding that he is entitled to loss of license benefits under the terms of the Plan without reduction or diminution on account of any reason, including but not limited to Plaintiff's receipt of disability benefits, and that Defendants DMS, Petersen, and Lloyd's be ordered to pay long-term benefits under the Plan without reduction, offset or diminution until such time as Plaintiff is no longer entitled to such benefits;

2. Grant Plaintiff, on behalf of the Plan, pursuant to ERISA §§ 409 and 502(a)(2), ERISA §§ 1109 and 1132(a)(2), declaratory and injunctive relief requiring that Defendant NASCAR:

   a. distribute an ERISA-compliant summary plan description of the Plan to Plan participants and beneficiaries by a method reasonably calculated to ensure receipt by such participants and beneficiaries;

   b. monitor distribution of information regarding Plan benefits by individuals with actual and apparent authority to provide such information, including providing training to such individuals regarding Plan benefits and procedures;

   c. provide accurate and truthful information to Plan participants regarding the applicable diminutions and offsets to Plan benefits;

   d. otherwise comply with all requirements under ERISA §1 *et seq*., 29 U.S.C. §§ 1001 *et seq*., with respect to disclosures to Plan participants and beneficiaries;

   e. enforce the Plan compliant with the Plan terms existing at the time of Plaintiff's

loss of license and the representations made by Defendants DMS, Petersen, Lloyd's, and NASCAR and their respective employees to Plaintiff regarding the Plan and the benefits Plaintiff would receive under the Plan;

      f.   pay to the Plan the amount necessary to fund Plaintiff's Plan benefit under the Plan, as reformed or represented to Plaintiff; and

      g.   monitor claims fiduciaries to ensure compliance with Plan terms and ERISA.

3.    Grant Plaintiff, on behalf of the Plan, pursuant to ERISA §§ 409 and 502(a)(2), ERISA §§1109 and 1132(a)(2), declaratory and injunctive relief requiring that Defendants DMS, Lloyd's, and Petersen:

      a.   enforce the Plan according to its Plan terms existing at the time of Plaintiff's loss of license;

      b.   cease from attempting to enforce the invalidly adopted alleged amendments to the Plan; and

      c.   cease from attempting to amend the Plan in violation of ERISA and Plan terms.

4.    Grant Plaintiff equitable relief:

      a.   imposing an equitable lien on the Plan benefits that have been withheld from Plaintiff as a result of his qualification for disability benefits or other income;

      b.   imposing a constructive trust on the Plan benefits that have been withheld from Plaintiff as a result of his qualification for disability benefits or other income;

      c.   enjoining Defendants DMS, Petersen, and Lloyd's from reducing Plaintiff's long-term benefits under the Plan on account of his receipt of disability benefits or other income;

      d.   imposing a surcharge upon Defendants DMS, Petersen, and Lloyd's requiring that

they pay to Plaintiff the money they withheld from him;

    e.    equitably estopping Defendants DMS, Petersen, and Lloyd's from denying Plaintiff his full benefits under the Plan without offset, reduction or diminution in any manner;

    f.    granting Plaintiff restitution for the amount of benefits that Defendants DMS, Petersen, and Lloyd's have wrongfully withheld from Plaintiff by offsetting his Plan benefits by the amount of disability benefits or other income Plaintiff receives;

    g.    reforming the Plan to comply with the representations made by Defendants DMS, Lloyd's, Petersen and NASCAR, and their respective employees, to Plaintiff regarding the Plan and the benefits Plaintiff was to receive under the Plan;

    h.    ordering that Plaintiff is entitled to benefits under the Plan without diminution or reduction on account of any amounts that he receives as disability benefits or for any other reason; and

    i.    Other appropriate declaratory, injunctive and equitable relief.

    5.    Award Plaintiff all reasonable attorney fees and expenses under ERISA § 502(g), 29 U.S.C. § 1132(g), incurred herein; and

    6.    Enter an award for such other and further relief as may be just and appropriate.

Dated this the 19th day of October, 2016.

Respectfully Submitted,

*/s/ Bryan L. Tyson*
Bryan L. Tyson
**MARCELLINO & TYSON, PLLC**
1315 East Boulevard, Suite 250
Charlotte, NC 28207
(704) 919-1519 (telephone)
(980) 219-7025 (facsimile)
E-mail: bryan@yourattorney.com

*/s/ Rachel Matesic*
Rachel Matesic
**MARCELLINO & TYSON, PLLC**
1315 East Boulevard, Suite 250
Charlotte, NC 28207
(704) 919-1519 (telephone)
(980) 219-7025 (facsimile)
E-mail: rachel@yourncattorney.com

*Counsel for Plaintiff*